# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| AMBER L. LAWTON, | ) |
| | ) |
|                 Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No. 7:16-CV-521 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|                 Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Amber Lynne Lawton ("Lawton") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Lawton alleges that the Administrative Law Judge ("ALJ") (1) failed to consider Lawton's mental impairments and resulting difficulties in maintaining concentration, persistence, or pace; (2) did not pose a proper hypothetical which contained all her impairments to the vocational expert; (3) erroneously found that Lawton did not require a cane to walk; and (4) improperly discounted her "credibility." I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **RECOMMEND DENYING** Lawton's Motion for Summary Judgment (Dkt. 14), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 16).

1

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Lawton failed to demonstrate that she was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Lawton protectively filed for SSI and DIB on April 7, 2014, claiming that her disability began on December 2, 2013. R. 206–16. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 87, 100. On May 11, 2016, ALJ Joseph T. Scruton held an administrative hearing to consider Lawton's disability claim. R. 33–67. Lawton was represented by an attorney at the hearing, which included testimony from Lawton and vocational expert John F. Newman. Id.

On June 15, 2016, the ALJ entered his decision analyzing Lawton's claim under the familiar five-step process,[2] and denying Lawton's claim for disability. R. 17–27. The ALJ

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform

2

found that Lawton suffered from the severe impairments of: cholelithiasis with liver disease; mild degenerative disc disease of the lumbar spine, thoracic spine, and cervical spine; generalized osteoarthritis; mood disorder; anxiety; dermatitis/eczema condition affecting hands; diagnosed fibromyalgia; and asthma. R. 19–20. The ALJ further found that Lawton retained the RFC to perform a range of sedentary work, but she is restricted to occasionally lifting and carrying ten pounds, standing and/or walking up to two hours in an eight-hour period, and sitting for six hours in an eight-hour period. R. 22. Next, the ALJ found that Lawton "cannot crawl or climb, but she is capable of occasionally balancing, stooping, kneeling, and crouching." Id. Additionally, the ALJ found that Lawton is capable of "frequent, though not constant, reaching, handling, and fingering bilaterally" and that she can "comprehend and complete 1-3 step tasks with non-complex work instructions." Id. The ALJ determined that Lawton could not return to her past relevant work as a packer performed at the medium level of exertion, a retail manager, a laborer, a housekeeper, or a cashier. R. 26. However, the ALJ determined that Lawton could perform jobs that exist in significant numbers in the national economy, such as assembler, packer (performed at the sedentary level of exertion), and inspector/tester. R. 27. Thus, the ALJ concluded that Lawton was not disabled. Id.

Lawton appealed the ALJ's decision to the Appeals Council, but her request for review was subsequently denied. R. 1–3. This appeal followed.

---

other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## ANALYSIS

Lawton challenges the ALJ's decision on three grounds: (1) that the ALJ failed to properly consider Lawton's mental impairments and resulting difficulties in maintaining concentration, persistence, or pace and did not include these impairments in the hypothetical question posed to the vocational expert at the hearing; (2) that the ALJ erroneously found that Lawton did not require a cane to walk; and (3) that the ALJ erred when he was not adequately specific in finding that Lawton's statements regarding her purported symptoms were inconsistent with the objective medical evidence. I find that each of Lawton's challenges to the ALJ's decision fails and that substantial evidence supports the ALJ's decision.

**Concentration, Persistence, or Pace**

Lawton contends that the ALJ failed to properly consider her mental impairments and resulting difficulties in maintaining concentration, persistence, and pace regarding the management of an eight-hour work day. Specifically, Lawton argues that the ALJ erred by "never explain[ing] his finding in relation to the medical evidence of record" when he evaluated Lawton's "mild-to-moderate" limitations in maintaining concentration, persistence, or pace, and therefore the Court is left to guess at how the ALJ developed Lawton's RFC. Dkt. 15, at 23–24. Additionally, Lawton argues that the ALJ erred because "the ALJ's hypothetical questions to the vocational expert did not include any questions addressing [Lawton's] mild to moderate limitations in concentration, persistence, or pace." Id. at 25.

In Mascio v. Colvin, the Fourth Circuit held that an ALJ does not generally account for a claimant's limitations in concentration, persistence, or pace by restricting the claimant to simple, routine tasks or unskilled work. The court noted, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in

4

concentration, persistence, or pace." 780 F.3d 632, 638 (4th Cir. 2015); see also Sexton v. Colvin, 21 F. Supp. 3d 639, 642–43 (W.D. Va. 2014) (citing Wiederholt v. Barnhart, 121 Fed. Appx. 833, 839 (10th Cir. 2005) (holding that a "limitation to simple, unskilled work does not necessarily" accommodate a person's difficulty in concentrating on or persisting in a task, or maintaining the pace required to complete a task)). In Mascio, the Fourth Circuit found that the ALJ did not explain why Mascio's moderate limitation in concentration, persistence, or pace did not translate into a limitation in his RFC. Mascio, 780 F.3d at 638. The court noted, however, that the ALJ may find that the concentration, persistence, or pace limitation would not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. Id.; see also Hutton v. Colvin, No. 2:14-cv-63, 2015 WL 3757204, at *3 (N.D. W. Va. June 16, 2015).

Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to review the evidence and explain the decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. See Mascio, 780 F.3d at 638. The ALJ's responsibility to highlight the evidence of record that supports his conclusion was further emphasized in Monroe v. Colvin, where the court found that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically apply the law to the record. 826 F.3d 176, 189 (4th Cir. 2016).

The Mascio court relied upon Winschel v. Comm'r of Soc. Sec., where the court rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration,

5

persistence, or pace by restricting the claimant to simple, routine tasks or unskilled work. 631 F.3d 1176, 1180 (11th Cir. 2011). However, the Winschel court explained that:

> when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

Id. (internal citations omitted). Courts within the Fourth Circuit have come to rely upon Winschel's reasoning to comply with Mascio. See St. Clair v. Colvin, No. 7:13cv571, 2015 WL 5310777, at *7 (W.D. Va. Sept. 11, 2015) (ALJ properly relied upon the opinion of consultative physician that plaintiff's impairment in concentration, persistence or pace did not prevent him from performing simple, repetitive tasks); Del Vecchio v. Colvin, No. 1:43cv116, 2015 WL 5023857, at * 5 (W.D.N.C. Aug. 25, 2015) (ALJ's reliance upon the opinion of state agency medical consultant that plaintiff could complete simple tasks even with moderate limitations in concentration, persistence, or pace satisfied the explanation necessary to support the RFC limitations); Geisler v. Comm'r, Soc. Sec. Admin., No. SAG–14–2857, 2015 WL 4485459, at *5 (D. Md. July 21, 2015) (ALJ properly relied on the opinions of state agency physicians that plaintiff's impairment in concentration, persistence or pace does not prevent him from performing simple, spoken instructions and simple routine tasks).

Likewise, in Hutton v. Colvin, the court held that a restriction of "unskilled work" accounted for claimant's limitations with concentration, persistence, or pace where the ALJ examined the claimant's ability to perform daily activities such as paying bills and counting change in the step four analysis, and noted that his treating physicians found that he exhibited

6

good attention, intact memory, logical thought flow, and good immediate and recent memory. 2015 WL 3757204, at *3–5. The court found that these reasons constituted "abundant explanation" for the ALJ's RFC findings regarding the claimant's concentration limitations, and thus, there was no error in the ALJ's conclusion that the claimant could perform unskilled work. Id.

Thus, Mascio reiterates the long-held proposition that substantial evidence in the record must support the limitations contained in the RFC and included in the hypothetical question presented to the vocational expert. An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

The ALJ's determination of Lawton's mental impairments regarding concentration, persistence, or pace and her resulting RFC does not run afoul of Mascio and is supported by substantial evidence. The ALJ noted that Lawton's mental impairments "cause no restriction in activities of daily living" and only "mild difficulties in maintaining social functioning." R. 25. Although the ALJ acknowledged that "affective and anxiety-related disorders can reasonably be expected to cause some difficulties in maintaining concentration, persistence, or pace," the ALJ found that these mental impairments limited Lawton to comprehending and completing 1-3 step sedentary tasks with non-complex work instructions and did not render her disabled within the meaning of the Act. Id. This RFC is consistent with the evidence in the record.

The ALJ properly evaluated the medical evidence in the record when he concluded that Lawton only suffered from "mild-to-moderate" limitations in concentration, persistence, or pace

7

due to the mental impairment of anxiety. R. 25. The ALJ evaluated progress notes from New Horizons Health Care, which reflect that Lawton reported anxiety symptoms, but not to the extent and severity that Lawton testified to at her administrative hearing. R. 25, 58–59, 1246–94. In fact, during Lawton's most recent appointment at New Horizons Health Care on November 30, 2015 (approximately 4½ months before her hearing), Victor Bell, M.D., reported that she appeared "alert and oriented," and a neurological examination confirmed this. R. 1615. Prior to that visit, on April 20, 2015, Angela Bolden, Ph.D., reported that Lawton's memory was "intact," her "thought process [was] linear," her "speech [was] clear/fluent," she was "open/readily conversant," and she had no thought disorders. R. 1621. Additionally, the ALJ noted that Lawton discontinued counseling a year prior to the ALJ's decision. R. 25, 1623. The ALJ found that the record reflected a "relative stability in her symptoms" demonstrated by Lawton's discontinuation of counseling for anxiety and her lack of severe anxiety symptoms. R. 25. The ALJ articulated that there is no "more restrictive medical assessment by a treating or examining physician or mental health professional" that contradicts the ALJ's finding of "relative stability in [Lawton's anxiety] symptoms" and his finding of "mild-to-moderate" limitations in concentration, persistence, or pace. Id.

Indeed, the record contains no opinion of an examining physician or mental health professional which is either more restrictive than, or contradictory to, the ALJ's findings regarding Lawton's RFC. State agency physician Howard S. Leizer, Ph.D., stated that Lawton was "not significantly limited" in her ability to "remember locations and work-like procedures," "understand and remember very short and simple instructions," "carry out very short and simple instructions," "work in coordination with or in proximity to others without being distracted by them," "interact appropriately with the general public," and "travel in unfamiliar places or use

8

public transportation." R. 92–96. At the reconsideration level of review, Joseph Familant, M.D., stated Lawton had only "mild" restrictions in "activities of daily living," "maintaining social functioning," and "maintaining concentration, persistence, or pace." R. 120–121. Dr. Familant further stated that Lawton had no "repeated episodes of decompensation, each of extended duration." R. 121.

Additionally, the ALJ relied on the "Function Report—Adult" that Lawton completed Lawton's testimony at the hearing. R. 25. Lawton explained that she goes to the grocery store twice a week, occasionally walks around her neighborhood, and socializes with individuals on the phone or at her own home when guests come to visit. R. 267–68. At the administrative hearing, Lawton testified that she helps her children with their homework, plays board games with her children, communicates with her daughter in Florida via Facebook, and communicates with her parents via telephone "all the time." R. 42, 47. Lawton also testified that she visits the library "once a month" to select books to read. R. 25, 46.

The ALJ addressed the evidence in the record—both medical and nonmedical—and came to a logical conclusion concerning Lawton's mental impairments and their effect on her concentration, persistence, or pace. Unlike in Mascio, there is no decisive or contradictory medical evidence that the ALJ failed to consider. Mascio, 780 F.3d at 636–37. Contrary to Lawton's claims, the ALJ explained his finding in relation to the medical evidence of record, citing to specific exhibits along the way. He explained that there is no medical evidence to support Lawton's claims that her anxiety affects her concentration, persistence, or pace so much as to render her incapable of performing sedentary work. The ALJ also relied on Lawton's testimony and statements in the "Function Report—Adult" to determine that Lawton engages in a certain amount of social activities despite her anxiety. I am not "left to guess about how the

9

ALJ arrived at his conclusions on [Lawton's] ability to perform relevant functions." Id. at 637. The ALJ constructed an adequate and logical bridge from the evidence to his conclusion regarding Lawton's RFC, and because substantial evidence supports his decision, I find that the ALJ properly considered Lawton's mental impairments in evaluating her concentration, persistence, or pace regarding her overall RFC.

Additionally, contrary to Lawton's assertions, the ALJ incorporated Lawton's mental impairments of anxiety into his questioning of the vocational expert at Lawton's hearing. R. 62. Specifically, in posing the hypothetical to the vocational expert, the ALJ described Lawton in pertinent part as an "individual capable of maintaining attention and concentration for one to three-step tasks, no complex work instructions, occasional interaction with others in the workplace in terms of supervisors and co-workers at a maximum and no requirements for public interaction." Id. Lawton testified regarding her anxiety symptoms at the hearing, stating that she has difficulty interacting and being around other people. R. 59. The ALJ incorporated this information into his questioning of the vocational expert when he asked if there were jobs in the area and the national economy that have, among other conditions, "no requirements for public interaction." R. 62. The ALJ specifically considered Lawton's mental limitations in his hypothetical question to the vocational expert.

Considering the record as a whole including Lawton's testimony, her responses to the "Function Report—Adult," and the lack of any restrictive or contradictory medical opinion concerning her anxiety, the ALJ determined Lawton has certain functional limitations, but these limitations did not preclude her from comprehending and completing certain sedentary work involving "1-3 step tasks that do not involve complex work instructions." R. 25. The ALJ incorporated Lawton's mental limitations into his questioning of the vocational expert, and the

vocational expert concluded that Lawton could perform jobs that exist in the national economy such as assembler, packer, and inspector/tester. R. 62–63. Consequently, I find that there is substantial evidence to support the ALJ's decision.

**<u>Use of a Cane</u>**

Lawton claims that the ALJ erred by finding that she did not require a cane to walk. The ALJ's decision that Lawton did not require a cane is supported by substantial evidence.

Lawton asserts that Dr. Bell prescribed that she use a cane, but she does not state when she received the prescription. R. 39. She does state, however, that she had been waiting "about a year" for her cane prescription. R. 40. The record reflects that Lawton talked with Dr. Bell about the possibility of the cane on January 16, 2015. R. 1628. However, there is no evidence in the record of a prescription for a cane from Dr. Bell or any other doctor. R. 23–24. The ALJ noted that "even if [Lawton] was recently prescribed a cane, the record does not establish that it is a medical necessity for regular (or, in fact, any) use based on the claimant's established impairments and the severity of those conditions shown by the objective medical evidence." R. 24.

The only evidence in the record regarding the use of a cane is a request to Dr. Bell by Lawton that he prescribe a cane. SSR 96-9p provides that "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device." S.S.R. 96-9p, 1996 WL 374185 (S.S.A. July 2, 1996). Here, Lawton can point to no evidence prescribing a cane as a medical necessity. Thus, the ALJ's conclusion that Lawton does not medically require a cane to walk is supported by substantial evidence.

**"Credibility"**

Finally, Lawton claims that the ALJ's "credibility" findings as to Lawton's allegations that she has difficulty sitting and standing, she must frequently lie down during the day, and she has difficulty gripping and holding items were not specific enough and therefore are not supported by substantial evidence.

Both parties address the ALJ's handling of credibility. In March 2016, the Social Security Administration superseded its policy on assessing the credibility of a claimant's statements (SSR 96-7p), and ruled that "credibility" is not appropriate terminology to be used in determining benefits. See SSR 16-3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." SSR 16-3p at *1. "In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole. However, "although SSR 16-3p eliminates the assessment of credibility, it still requires assessment of most of the same factors to be considered under SSR 96-7p." Kim v. Comm'r, Soc. Sec. Admin., No. 9:16-0823-BM, 2017 WL 2912414, at *4 n.10 (D.S.C. July 7, 2017).

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and the ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). A claimant's subjective allegations of disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the record as a whole. See 20 C.F.R. §§ 404.1529, 416.929 (2014). If a claimant's statements are inconsistent with other evidence, the ALJ may

find that the claimant's statements are overall outweighed by that other evidence after weighing both accordingly. See SSR 16-3p.

Here, the ALJ found no objective medical evidence to corroborate Lawton's claims that she has trouble sitting and standing, must frequently lie down, and has difficulty grabbing and holding items, and the record contains no such objective medical evidence. R. 24. The ALJ noted that of Lawton's many ailments, the "gastrointestinal issues were the most prominent of her medical conditions." Id. However, the ALJ found that medication alleviated Lawton's gastroenterological problems, and that she only complained of constipation after her cholecystectomy. R. 23. Lawton also complained of back and neck pain, but the ALJ explained that "clinical findings were notable for paraspinal tenderness and diminished range of motion, but X-rays showed *only mild degenerative changes* of the thoracolumbar spine." Id. (emphasis added). The ALJ found it significant that Dr. Bell did not prescribe a cane, instead controlling Lawton's pain by requiring follow-up appointments occurring at three-month intervals. R. 23–24. The ALJ also found it significant that Lawton "acknowledged that she was not stretching or getting exercise." Id. Due to these findings, the ALJ concluded that Lawton's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." R. 24.

The ALJ further found that the veracity of Lawton's statements concerning the purported severity of her symptoms was diminished by contradictory statements she made concerning the reason she left her previous job as a packer. Id. The ALJ explained that Lawton had stated in her application for social security disability benefits that she had been "'laid off' from her most recent job because the temporary service had no work for her." Id. However, Lawton gave a different answer at the administrative hearing, stating that she was too physically and mentally

unwell to continue to work. Id.; R. 49–50. The ALJ concluded that "these contradictory assertions about the reason she stopped working raise legitimate questions about the extent to which one can accept her allegations concerning the functional limitations attributable to her impairments." R. 24.

Considering the lack of medical evidence indicating that Lawton has difficulty sitting and standing, she must frequently lie down during the day, and she has difficulty gripping and holding items as well as Lawton's contradictory statements concerning her discontinuation of work, I find that the ALJ's decision regarding the inconsistency of Lawton's statements regarding the severity of her symptoms in light of the objective medical evidence to be adequately specific and supported by substantial evidence. Accordingly, Lawton's claim that the ALJ erred in evaluating Lawton's "credibility" is denied.

## CONCLUSION

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. The ALJ properly considered all of the objective and subjective evidence in adjudicating Lawton's claim for benefits and in determining that her physical and mental impairments would not significantly limit her ability to do basic work activities. Accordingly, I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Lawton's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any

objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

                    Enter:  February 26, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge